**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| v. | ) ) ) Crim. Action No. 21-0291-2 (ABJ) |
| ALBUQUERQUE COSPER HEAD, | ) |
| Defendant. | ) |

### ORDER

Pending before the Court is an application by members of the press seeking access to videos in this criminal matter. Application for Access to Video Exs. [Dkt. # 67] ("Application"). Specifically, the applicants request two videos related to defendant number two in this case, Albuquerque Cosper Head. *See id.* On April 28, 2021, the government requested pretrial detention for defendant Head and filed a brief in support of that request. Gov't Mem. in Supp. of Pre-Trial Detention, *United States v. Head*, 21-cr-0291-2 [Dkt. # 32] ("Gov't Pre-Trial Mem."). The government's memo referenced two videos, which are the subject of the instant application. *See* Govt's Pre-Trial Mem. at 11, 22; Application at 2. The Court ordered the parties in the criminal matter to advise whether they object to the release of the requested videos and the basis for any objections. Min. Order (Sept. 21, 2021).

The government agrees to the release of the videos, which it states were "submitted to the Court in anticipation of the Court's decision on detention, and . . . were not subject to a sealing order." Gov't Resp. [Dkt. # 74] at 2. Defendant Head, who is the subject of the application and these videos, takes no position on the motion. Def. Head's Resp. [Dkt. # 73] at 2. His co-defendants, Young and Sibick, "object to the release of the short video clips and still photo, because they lack context and present a misleading image of culpability compared with longer video clips, played in real time, of the same events." Def. Young's Reply [Dkt. # 72] at 1; Def. Sibick's Resp. [Dkt. # 76] at 1 (adopting Young's response). As defendant Young explains, the "objection is not to the release of videos showing the alleged acts" but to the release of "the

1

narrowly-sliced and slowed-down version of a broader, more chaotic scene" in advance of trial, which he asserts could unduly prejudice him.  Def. Young's Reply at 1.

As the D.C. Circuit has held, "[t]he common-law right of public access to judicial records 'is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch.'" *In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, 964 F.3d 1121, 1127 (D.C. Cir. 2020), quoting *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017).  Although "not all documents filed with courts are judicial records," *id.* at 1128, quoting *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013), documents and other materials filed in court "intended to influence the court" are judicial records.  *Id.*; *MetLife*, 865 F.3d at 668 (holding that appellate briefs and appendices are judicial records because they are "intended to influence" the court and the court "ma[kes] decisions about them").  There is a strong presumption that the public has a right to access judicial records, 964 F.3d at 1127–28, and applicants here assert that the parties cannot rebut that presumption as to these videos.  Application at 2–3, citing *id.* and *United States v. Hubbard*, 650 F.2d 293, 317–21 (D.C. Cir. 1980).

In considering whether judicial records may be made public, courts weigh the following six factors:  (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.  *MetLife*, 865 F.3d at 665 (applying the *Hubbard* test).  Judicial records may remain sealed "only 'if the district court, after considering the relevant facts and circumstances of the particular case, and after weighing the interests advanced by the parties in light of the public interest and the duty of the courts, concludes that justice so requires.'"  *Id.* at 665–66, quoting *In re Nat'l Broad. Co.*, 653 F.2d 609, 613 (D.C. Cir. 1981).

There is no dispute that the two videos are judicial records.  They were provided to the court to influence the decision of whether to detain defendant Head pretrial.  *See* Gov't Pre-Trial

Mem. at 11, 22.[1]  Further, no defendant contests the significant public and media interest in this and other criminal matters arising from the January 6, 2021 breach of the United States Capitol. *See* Def. Head's Resp.; Def. Young's Reply; Def. Sibick's Resp.; Standing Order 21-28, In re: Media Access to Video Exhibits in Pretrial Capitol Cases at 2.  The only argument against their release is defendant's Young's contention that "the release of the short video clips and still photo . . . lack context and present a misleading image of culpability compared with longer video clips, played in real time, of the same events."  Def. Young's Reply at 1.  His "objection is not to the release of videos showing the alleged acts" but "to the narrowly-sliced and slowed-down version of a broader, more chaotic scene.  To release only the Government's selected portion in advance of trial could serve to unduly prejudice Defendant."  *Id.* (stating there is no objection to the release of a longer video clip offered in real time speed).

But the two requested videos are not slowed-down versions; they are in real time.[2]  To the extent any defendant in this matter seeks to present the Court or a jury with a longer version of either video at future proceedings, this order does not prejudice such a request.  Indeed, the Court reviewed and considered longer video clips presented by the defense in a September 28, 2021 hearing involving co-defendant Sibick.  To the extent the objecting co-defendants have used the term prejudice to express a concern about tainting the jury pool in the future, that concern is premature since no trial date has been set, and  it is unclear whether the videos will be viewed by potential jurors in this jurisdiction.  More importantly, the jurors' exposure to pre-trial publicity and any potential bias for or against the individual defendants and alleged victim will be fully explored through the *voir dire* process.

For these reasons, and upon consideration of the videos, the argument of the applicants and the parties in the criminal case, and the applicable law, the Application is hereby GRANTED.

---

1    Defendant Head asserts that "it would appear that the videos sought are the same videos this Court previously ordered denied in its Minute Entry from July 6, 2021 because the videos . . . had not been previously provided to the Court." Def. Head's Resp. at 2.  But unlike the videos denied release in July, the government did provide the videos at issue here to the court to influence its decision-making.  Gov't Resp. at 2.

2    Also, there is no still photo in either video exhibit, so it is unclear what photo defendant Young is referring to in his response.

The government is ORDERED to make the two videos promptly available without restrictions by providing access using the "drop box" technical solution described in Standing Order 21-28.

    SO ORDERED.

*Amy B Jackson*

AMY BERMAN JACKSON
United States District Judge

DATE:  October 13, 2021