UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 1:21-CR-291-002 |
| ) | |
| ALBUQUERQUE COSPER HEAD ) | |

**ALBUQUERQUE HEAD'S RESTITUTION MEMORANDUM AND RELPY TO GOVERNMENT'S REQUEST FOR ADDITIONAL RESTITUTION**

Defendant Albuquerque Head, through counsel, respectfully submits this memorandum regarding restitution and in reply to the "Government's Restitution Memorandum." ECF 173-1.

### I. BACKGROUND

On October 27, 2022, this Honorable Court sentenced Albuquerque Head to 90 months' imprisonment, followed by 3 years of supervised release. ECF 171. The Court further ordered restitution of $2,000, per the agreement of the parties in the plea agreement. ECF 123, pg. 9-10. At the request of the Government, and over Mr. Head's objection, a final restitution amount was deferred, and a restitution hearing was scheduled for December 16, 2022. A briefing schedule was also provided for the parties in advance of the restitution hearing.

For the reasons that follow, Mr. Head submits that no additional restitution should be ordered, but if it is, that a reasonable amount be ordered commensurate with his level of participation at the U.S. Capitol on January 6, 2021.

II. **ARGUMENT**

A. **The Plea Agreement captures the full scope of restitution.**

The plain reading of the plea agreement (ECF 123) sets forth the entire operative agreement between the parties. The plea agreement, as accepted by this Court at sentencing, succinctly sets out that the total amount of restitution is $2,000. *See* ECF 123, pg. 9-10. Following the agreed upon amount, the are 4 paragraphs that essentially explain Mr. Head's duty to pay his share of restitution, payment plans, and the ability of the Government to collect any outstanding debts owed. *Id*. No where in the plea agreement is there a reservation for future or additional amounts of restitution. In fact, a couple of paragraphs down in Paragraph 13, further cements that the terms in the plea agreement constitute the full agreement of the parties. *Id* at pg. 11.

Furthermore, the Presentence Report (hereinafter "PSR") reflects a finite amount of restitution as agreed upon by the parties. *See* PSR (ECF 136), ¶¶ 146, 165. Officer Fanone was contacted by the U.S. Probation Office and communicated that he is not seeking restitution. PSR, ¶ 37.

Now, at the eleventh hour, the Government seeks an additional $96,927.18 in restitution. The request is contrary to the terms of the plea agreement and should not be imposed. The parties' plea agreement represents bargained for exchange and was detrimentally relied upon by Mr. Head. Akin to contract law, specific performance of the plea agreement should be tantamount. Federal prosecutors are "authorized to enter into plea agreements" and those agreements should be "specifically enforceable." *Sanders v United States*, 252 F.3d 1329, 1334 (Fed. Cir. 2001). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the

inducement or consideration, such promise *must* be fulfilled. *Santobello v. New York*, 40 U.S. 257 (1971) (emphasis added).

Mr. Head was first arrested and charged on April 14, 2021, for his involvement in the January 6 riots. The parties began plea negotiations soon thereafter, with a final plea agreement being extended on April 26, 2022 – more than 15 months after the riots. ECF 123. The plea agreement was executed then later filed on May 6, 2022. Mr. Head was ultimately sentenced on October 27, 2022 – more than 21 months after the riots. All of the supporting documentation filed by the Government in its restitution request was available no later than December 2021, when Officer Fanone stopped receiving medical care and resigned from the Metropolitan Police Department. *See* ECF Exhibit 1 & 2 of 173-1. Despite having access to this information, it was not brought to the parties' attention until right before sentencing, leaving little recourse at the time. This additional restitution amount was never considered by the parties and is not a part of the plain language of the plea agreement. Thus, it should be rejected as a whole.

### B. If Restitution is ordered, it should be commensurate with Mr. Head's level of culpability.

The Government's request for restitution seeks to hold all of the individuals responsible for assaulting Officer Fanone jointly and severally liable. ECF 173-1 at 5. In doing so, it proposes (1) an across-the-board order of the full amount against all of the individuals involved in Officer Fanone's assault or, (2) a "hybrid" approach, which allows for the amount of restitution to be tiered to reflect each individuals' involvement.

If the Court intends to order restitution – it should not – the Court should use the "hybrid" approach to determine an amount of restitution that is commensurate with Mr.

Head's level of participation. Based on this model, Mr. Head suggests that he should be held responsible for no more than 35% of the total expenses, or $33,924.48.

The Government concedes that Mr. Head was not responsible for applying the "taser to the back of Officer Fanone's neck," which at least indicates there are different levels of participation within the attack. *See* Gov't Rest. Memo, ECF 173-1, pg. 6. As evidenced at sentencing, Mr. Head was responsible for initiating the attack of Officer Fanone – removing him from the police line on the lower West Terrace and pulling him into the crowd. He did not, however, punch, kick, or tase Officer Fanone. Further, all of the injuries suffered by Officer Fanone that required medical treatment were inflicted by others in the mob.

Mr. Head is not seeking to detract from his acceptance of responsibility from his involvement in the attack on Officer Fanone. As the Court did in his sentencing hearing, it should assess Mr. Head's role in the attack as compared to others before ordering additional restitution. Although the Court is aware, it bears repeating that Mr. Head is indigent and has been in continuous custody since his arrest in April 2021. He has received his GED and has worked in the construction industry for most of his life. *See* PSR, ¶¶ 125-132. His expected release date from the Bureau of Prisons is currently September 4, 2027[1]. Upon his release, his family (fiancé and 3 kids) will look to him for immediate support. Imposition of such a large amount of restitution will likely prove insurmountable.

### III. <u>CONCLUSION</u>

For the foregoing reasons, Mr. Head objects to the Government's request for further restitution other than what is explicitly stated in the plea agreement. Furthermore, in the

---

[1] This according to Federal Bureau of Prisons website, www.bop.gov, last accessed December 12, 2022.

event the Court is inclined to grant the Government's request, Mr. Head respectfully requests any amount of restitution ordered be commensurate with his level of culpability and participation.

RESPECTFULLY SUBMITTED:

FEDERAL DEFENDER SERVICES OF
EASTERN TENNESSEE, INC.

BY: s/ *G. Nicholas Wallace*
G. Nicholas Wallace
ASB No. 6992D56F
Federal Defender Services of
Eastern Tennessee, Inc.
800 South Gay Street, Suite 2400
Knoxville, TN  37929

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2022, a copy of the foregoing Defendant's Restitution Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

s/ *G. Nicholas Wallace*
